GEORGE FRAZIER *et al.*, plaintiffs in error, *v.* WILLIAM LAUGHLIN *et al.*, County Commissioners of Adams County, defendants in error.

### *Error to Adams.*

In an action of *debt* on a bond, the judgment must be *in debt*, and the Court cannot amend the verdict by adding the amount of the penalty of the bond as the debt, when omitted by the jury. It is a fact which a party has a right to have found by the jury, as well as any other fact.

There being no law requiring a School Commissioner's bond to be entered of record, a certified copy of a recorded bond would be inadmissible in evidence. The record itself, however, would be properly admissible in evidence, it being first shown that a genuine original once existed, and was lost or not produced after due notice, and also that such record was a true copy.

No rule is better settled than that which requires all the parties to a suit to consent, before any one of them can be used as a witness.

After the commencement of a suit by certain individuals as County Commissioners, one of them, whose term of office had expired before the trial, was called as a witness on the trial, and he was permitted to testify: *Held,* that, as it was unnecessary to have brought the suit in their individual names, and as he had ceased to be a Commissioner, he was a competent witness.

The record of sales of school lands required to be kept by the School Commissioner is properly admissible in evidence. If such record does not show,— and the law does not require that it should show,—whether the sales were made for cash or credit, it is competent in an action against the Commissioner, if the declaration does not aver that the sales were made for cash, to prove in some other way that the sales were so made. On the other hand, it is equally competent for the defendant, in the absence of such averment, to show, by parol testimony, that the sales were made on a credit.

In an action against a School Commissioner on his official bond, the Court instructed the jury, that if they find that the several sales of school lands took

Frazier *et al. v.* Laughlin *et al.*

place as mentioned in the declaration, they should then find for the plaintiffs the difference between the prices for which the lands sold on the first and second sales, and that they might also find, as further damages, interest on the same from the time of the last sale to the time of trial: *Held,* that the latter part of the instruction was erroneous as interest is not allowable, and that the inquiry by the jury should have been, what have the plaintiffs lost by reason of the neglect of the Commissioner?

A further instruction, that the jury might allow the plaintiffs twelve per cent. interest on moneys proved to have been received by the Commissioner and not paid over to the Treasurer, was *held* erroneous, for the reason that the law only allows six per cent. interest, except upon the express agreement of the parties.

THIS was an action of *debt* in the Adams Circuit Court, September term 1842, the Hon. Stephen A. Douglass presiding, brought by Laughlin and others as County Commissioners of Adams, against the defendants, upon a School Commissioner's bond given to Riddle, Patten and Seehorn, Commissioners, and their successors in office, the penalty of which was $12,000. The defendants in error were the successors of the obligees. The condition of the bond was, that Frazier should faithfully discharge the duties of his office.

The breaches were as follows: *First,* That on the 26th of April, 1834, he exposed to sale the South West quarter of section sixteen (16), and one Taylor purchased at $2·26 per acre; that at the same time he sold the North West quarter of the South East quarter of same section, and Taylor purchased at $2·06 per acre; and at the same time sold other tracts: that after the sale, Taylor neglected and refused to pay the purchase money: that thereupon afterwards on the 2nd Feb. 1835, he sold the same lands to one G. W. Frazier at $1·25 per acre, a price less than the first; yet Frazier, the School Commissioner, refused and neglected to sue Taylor for the difference. *Second,* is a breach of precisely the same character. *Third,* avers that a township was duly organized and incorporated; treasurer appointed, who gave bond, and Frazier refused and failed to pay over all moneys in his hands, and refused to deliver over bonds, mortgages, &c. by means of which the action accrued.

The defendants pleaded ten pleas. *First,* as to the 3d

breach, that Frazier did pay over. *Second*, as to 3d breach, that Treasurer never gave bond. *Third*, as to 3d breach, that Frazier had performed generally. *Fourth*, as to 3d breach, denies the appointment of McGinnis as treasurer. *Fifth*, as to 3d breach, denies the incorporation of township. The *sixth* is a general plea of *non est factum*. The *seventh* denies the first purchase in 2nd breach. The *eighth* denies the second purchase in 2nd breach. The *ninth* denies the first purchase in 1st breach. The *tenth* denies the second purchase in 1st breach. Issue was joined upon all of these pleas, and a jury impanneled, who found a verdict for the plaintiffs, and assessed the damages at $575·72, whereupon the defendants moved for a new trial.

By the bill of exceptions, it appeared that plaintiffs to prove the bond sued on, offered the records of the County Commissioners' Court to which the defendants objected. O. H. Browning then, upon oath, stated that he had notified Nicholas Wren, one of the defendants, a clerk of the County Commissioner's Court, to produce the original bond to be used as evidence, and the defendant Wren informed him that he had searched his office and could not find it, and did not know what had become of it. The Court then permitted it to be read, although objected to. The plaintiffs then produced a record book, purporting to be a book of entries of the School Commissioner of Adams county, and called one Harrison as a witness, who stated he was now School Commissioner, and the book produced was in his possession as such, and that he obtained the same from the clerk of the County Commissioners' Court, and that the same was the record of sales of school lands. Rogers was sworn, and said that he succeeded Frazier as School Commissioner; that he had the same book and obtained it from the clerk of the County Commissioner's Court, to whom he returned it when he went out of office. Wren, the clerk, and one of the defendants, was then called and the defendants objected. The Court overruled the objection, and Wren testified that he was the clerk; that he obtained the record book from Laughlin, and delivered it to witness, Rogers, and afterwards to Harrison. Laughlin was then

called, who said that he was the same person named as plaintiff in the record; that when said suit was brought he was County Commisssoner, but was not now and had no interest in the result. The defendants objected to him, but were overruled. He then testified that he obtained the book from Frazier, and gave it to Wren. The plaintiffs then offered certain entries therein in evidence, which were objected to, and the objection overruled.

McGinnis was sworn as a witness, who proved the incorporation of the township, the appointment of himself as treasurer, and that he filed his bond; that he settled with Frazier, and received about $972 in bonds, mortgages, &c. but no money. The plaintiffs also introduced a memorandum of settlement with McGinnis by Frazier. This was all the testimony of plaintiffs.

The defendants then introduced Jonathan Browning, who stated that he was present at the settlement with McGinnis, and both parties were satisfied, proved a receipt for bonds, mortgages and notes of school fund. McGinnis stated that he was present at first sale of school lands and the sale was made on one, two and three years credit, the purchaser giving bond and security to be thereafter approved, by the clerk of the County Commissioners' Court; that the Court was not then in session, but at the next term they approved several of the bonds. This evidence was objected to, and the Court excluded it from the jury.

All of these decisions of the Court were excepted to, as appeared by the bill of exceptions.

The plaintiff then asked the Court to instruct the jury that if they believed, "that there was a sale and non-compliance by purchaser, and second sale for an inferior price, and that Frazier had failed to sue for the difference, that the plaintiff was entitled to a verdict for the difference and interest from the time of sale." *Second,* "that if they believed Frazier had not paid over all the moneys by him received, they ought to find the amount of money so retained, and twelve per cent. interest thereon from the refusal to this time." The defendant objected and was overruled.

The defendant then asked for instruction as to the first and second breach, "that if it appeared that the lands were sold on a credit of one, two and three years, the plaintiff could not recover," which the Court refused.

Thereupon a verdict was found as before stated. A motion for a new trial was made, overruled, and judgment rendered.

*J. A. McDougall,* for the plaintiff in error:

I.   The record of the bond should not have been introduced. There should be proof of loss, evidence of a diligent search. 1 Starkie's Ev. 335, and notes.

II.   Laughlin was not a competent witness. A *nominal* party is not a competent witness. *Smith* v. *Moore.* 3 Scam. 463.

The general rule of the common law. 1 Greenl. Ev. 378, 379: Ib. 393. Laughlin was liable for costs.

A defendant administrator, without interest, is an incompetent witness when objected to, for the reason that he is a party to the record. *Fox,* adm'r, v. *Whitney,* adm'r, 16 Mass. 118, 120.

An assignee, not a party, and without interest except by possibility for costs, is incompetent. *Hopkins* v. *Banks,* 7 Cowen, 653.

III.   Wren was incompetent.

Three defendants who had proved their discharge in bankruptcy were incompetent witnesses, as they were parties to the contract and record. *Mant* v. *Mainwaring,* 4 Eng. Com. Law R. 48. The plaintiff called defendant, who had suffered judgment by default, and was released from liability except therein. The co-defendants objected, and the Court held the defendant incompetent. Burrough, Justice, gives the general rule.

The general rule is recognized, that parties to the record are inadmissible. *Commonwealth* v. *Marsh,* 10 Pick. 57. The doctrine is recognized in 1 Greenl. Ev. 399.

A nominal plaintiff cannot be called as a witness by the defendant, without the consent of the real plaintiff in interest. *Frear* v. *Evertson,* 20 Johns. 143.

A defendant discharged, and without interest, is incompetent. *Schermerhorn* v. *Schermerhorn*, 1 Wend. 123.

A co-surety in an office bond was called by plaintiff, and objected to by his co-defendants, and he was held incompetent. *Supervisors of Chenango* v. *Birdsall*, 4 Wend. 457.

A party to the record, though void of interest, is incompetent. The defendant called the plaintiff, and he was willing, but plaintiff's counsel objected. *Benjamin* v. *Coventry*, 19 Wend. 354.

A party to the record cannot be released so as to become a witness. *Scott* v. *Lloyd*, 12 Peters, 149.

IV. The Court erred in allowing evidence of the entries.

V. The Court erred in excluding McGinnis.

VI. The Court erred in its instructions.

The School Commissioner is to pay over money to the treasurer, but I can find no provision for twelve per cent. interest. Laws of 1836-7, 317, § 10.

The Laws of 1829, 152, § 7, provide for a sale for cash; if, on the next day the payment is not made, the same shall be offered for re-sale, and the first purchaser is liable for the difference.

This is a penalty and the law is to be construed strictly.

School lands may be sold on a credit. The penalties that attach under the law providing for sales for cash do not apply here.

The law presumes that every officer does his duty.

*O. H. Browning & N. Bushnell,* for the defendants in error:

I. The first error in this case is abandoned by the plaintiff.

II. The second error assigned is, admitting a copy of the bond sued upon to be read in evidence.

1. The first question arising upon this assignment of error is, whether where a deed is pleaded with a protest, the plea of *non est factum*, not sworn to, will impose on the plaintiff the necessity of producing the deed itself in evidence? It does not.

The 12th section of the Practice Act, Gale's Stat. 531,

provides, "that no person shall be permitted to deny, on trial, the execution of any instrument in writing, whether sealed or not, upon which any action may have been brought, unless the party so denying the same, shall verify his plea by affidavit."

Before the enactment of this statute, the plea of *non est factum,* though not sworn to, imposed upon the plaintiff the necessity of proving the execution of the deed, to do which it was necessary that the deed itself should be produced in Court, for exhibition to the subscribing witness; or if not attested, to be shown to the witnesses called to prove the hand writing, and also that the Court might see that there were no material alterations, or interlineations, which destroyed it as the deed of the party. 2 Stark. Ev. 270; *Longley* v. *Norvall,* 1 Scam. 390.

And if the plea of *non est factum* was not interposed, the plaintiff need not produce the deed at all, for by any other plea its execution was admitted, and need not therefore be proved.

But since the passage of this Act, the plea of *non est factum,* not verified by affidavit, has no longer the effect to compel the plaintiff to proof of the deed; but its only effect, if indeed it has any, is to enable the defendant to avail himself of any material variance between the instrument described in the declaration, and the one exhibited in evidence, though not to deny or question that either the one or the other is his deed. *Longley* v. *Norvall,* 1 Scam. 390.

And where a deed is placed in the custody of the law, and required to be recorded, and kept in the archives of a Court, or an office, an exemplification of the record, *a fortiori,* the record itself is as high evidence of the terms and contents of the deed, as the original deed itself, for there is a conclusive presumption that it has been correctly and literally recorded.

Therefore to enable the defendant to take advantage of a variance, the production of the original was not necessary; for the plea not being accompanied by affidavit, admits the execution, that is, the signing and sealing of the deed, and puts in issue only whether the deed is set out according to

its legal tenor and effect, which may be as well ascertained by an exemplification of the record, as by the original itself; for as the law requires the bond to be recorded, a conclusive presumption arises that it has been truly and correctly done. 2 Bac. Abr. 610, title Ev.; 7 Com. Dig. 426, title Ev. A, 3.

2. It was not necessary, in this case, for the plaintiff to have made profert of the bond. The law requires that the original shall be filed in the office of the county clerk, where it is to remain for the use of the inhabitants of the county. It is by law placed in the custody of the County Commissioners' Court, and none but the Court or its clerk has a right to the possession of it. It is well settled that a party has no right to the possession of guardian bonds, appeal bonds, and others of the same kind, which are approved by the Court, or the clerk of the Court, and deposited in the archives of the Court, or the clerk's office. Profert of such bonds cannot be considered necessary in a declaration by a party for whose benefit they are executed. They are in the custody of the law, and are intended to be preserved in order that they may be accessible to either party, and as much so to the one as the other. And where the plaintiff has no right to the possession of a deed, or a bond, or the counter part of it, a profert is unnecessary. 1 Chit. Pl. 350; 5 Bac. Abr. 432, title Pleas and Pleadings, Div. 12; 5 Jacob's Law Dic. title Profert; *Whitfield* v. *Faussett,* 1 Vesey Sr. 394; *Anderson* v. *Barry,* 2 J. J. Marsh. 271; *Carson* v. *Pearle,* 4 do. 94.

And where profert is unnecessarily or improperly made, it does not entitle the defendant to demand oyer of the instrument, but he is bound to plead without it; for in such case, the statement of the deed with profert will be considered as as surplusage, and therefore will not entitle the defendant to oyer. 1 Chit. Pl. 350, 415; 1 Tidd's Prac. 635; *Gray* v. *Fielder,* Cro. Car. 209; 1 Saund. 9, note *d.*; *Morris'* case, 2 Salk, 497; *Rex* v. *Amery,* 1 T. R. 149; *Cook* v. *Remington* 2 Salk, 498; 6 Bac. Abr. 325; *Moore's Ex'rs.* v. *Paul,* 2 Bibb. 331; *Sneed* v. *Wister,* 8 Wheat. 690.

3. And although profert was in this case unnecessary, yet the law requiring the bond to be recorded, the record was

Frazier *et al. v.* Laughlin *et al.*

thereby made equal in dignity, and as evidence, with the original, and the production of the record was sufficient to satisfy the profert made in the declaration. 2 Bac. Abr. 610; 7 Com. Dig. title Ev. A, 2; *Ronkendorf* v. *Taylor's lessee,* 4 Pet, 349; *Patterson* v. *Winn,* 5 Peters, 241; *Lee* v. *Tapscott,* 2 Wash. R. 280; *Owings* v. *Hull,* 9 Peters, 624.

And where the execution of the instrument sued upon is not the point in issue, a copy may be given in evidence, although there is no count in the declaration on a lost instrument. *Renner* v. *Bank of Columbia,* 9 Wheat. 581; *Taylor's Adm'r* v. *Peyton's Adm'r,* 1 Wash. R. 252; *Seebre* v. *Dorr,* 5 Cond. R. 680; *Carroll* v. *Peake,* 1 Peters, 21; *Tayloe* v. *Riggs,* Ib. 593.

4. Where the objection is purely technical it must be made in the Court below; the very point must be there presented. In this case the objection now insisted upon was not urged in the Court below, but the evidence was resisted for an entirely different reason, which was obviated. *Jackson* v. *Davis,* 5 Cowen, 123; *Gillham* v. *State Bank,* 2 Scam. 250; *Harmon* v. *Thornton,* Ib. 355; *Whitesides* v. *Jackson,* 1 Wend. 20; *Dudley* v. *Grayson,* 9 Mon. 261-2; see, also, *Dunham* v. *Simmons,* 3 Hill's (N. Y.) R. 609. This case is very much in point.

III. The third error assigned is admitting defendant Wren to testify.

To this it is answered

1. That Wren was not compelled to testify. The bill of exceptions shows that the counsel of defendants objected to Wren as a witness, who was thereupon informed by the Court that he would not be required to answer, but if he chose to do so voluntarily, the Court would not restrain him, and he did voluntarily, notwithstanding the objections of his counsel, give the evidence detailed. To this there could be no objection. The case would have been different had the objection come from the other party. Then it would have been the duty of the Court to interpose. But when a party consents that his adversary may be sworn as a witness, and he is sworn,

and voluntarity gives his evidence, neither party can afterwards question it; and so are the authorities.

2. Wren's evidence was wholly immaterial, and could have had no influence upon the decision of the case. It was not given to the jury, but to the Court, to open the way for the admission of other evidence to the jury, which had already been sufficiently done; and the examination of Wren was an act of supererogation. And this was preliminary evidence, addressed to the Court, upon a collateral point, upon a subject on which the jury could not pass, and in all such cases parties, and persons in interest, are competent. 2 Phil. Ev. Cowen & Hill's Ed. page 138, part I. latter part of note 122.

IV. The fourth error assigned is admitting Laughlin, one of the plaintiffs on the record as a witness.

1. The general rule is, that a party to a suit cannot be a witness. This rule is founded on the interest of the party, and when that interest ceases, the objection is removed. *Willings* v. *Consequa*, 1 Peters' C. C. R. 301; *Smith* v. *Carrington*, 2 Peters' Cond R. 31, and notes.

Laughlin was but a nominal party, having no interest whatever in the event of the suit, not even being liable for costs; and this sufficiently appears both from the declaration, and the bill of exceptions; and a mere nominal party if not interested in the event of the suit, is competent as a witness. *Worrall* v. *Jones*, 20 Eng. Com. Law R. 178; 2 Phil. Ev. Cowen & Hill's Ed. p. 135. n.122; *Duffee* v. *Pennington*, 1 Ala. 570; *Lampton* v. *Lampton's Ex'rs*, 6 Mon. 618.

2. Laughlin's evidence, like Wren's, was immaterial ,and might have been altogether dispensed with; being addressed to the Court, and not to the jury; and where evidence is given to prove a fact unnecessary to be proved, and has no tendency to influence the minds of the jury upon other points, the verdict will not be set aside, though such evidence was incompetent. *Buddington* v. *Shearer*, 22 Pick. 428.

V. The fifth assignment of error, admitting entries in School Commissioner's record of the sales in section 16, 2 N. 6 W.

The book in which the sales are required by law to be

recorded, and in which they are in fact recorded, was the appropriate, and the very best evidence of that fact.

The books of a corporation established for public purposes, are the best evidence of its acts and proceedings. *Owings* v. *Speed,* 4 Peters' Cond. R. 716.

And the law will presume that a man, acting in public office, has been duly appointed; and that entries found in public books have been made by the proper officer. *Bank of the United States* v. *Dandridge,* 6 Peters' Cond. R. 445.

VI. VII.   These question the opinion of the Court in giving plaintiffs' instructions and refusing those of defendants below.

It is sufficient to say that those given were conformable to the issues and the evidence, and that those refused were variant from both, and mere abstract propositions.   The one was, therefore, properly given, the others properly refused. *Heaton* v. *Kemper,* 2 Scam. 367; *Stout* v. *McAdams,* Ib. 69. And no exceptions were insisted upon at the time they were given.

VIII.   Excluding the evidence of witness, McGinnis.

There was no error in this.   What they sought to prove by McGinnis was not in issue before the jury, and his testimony was, consequently, properly rejected.

IX.   Overruling motion for new trial.

If the positions assumed in the preceding part of this argument be correct, there was no error in overruling the motion for a new trial.

The Court was also referred to the following statutes, to wit:

School Commissioners to be appointed and give bond. Pamphlet of School Laws, published in 1835, p. 8.

If land, sold and forfeited, on second sale does not bring as much as on the first sale, the School Commissioner shall sue for and recover the difference.   Ibid. p. 10, § 7.

Any officer having money of township, and refusing to pay it over, shall be liable for the same, with twelve per cent. interest.   Ibid. p. 18, § 9.

Townships must be incorporated.   Laws of 1836-7, p. 315, § 4.

Trustees are to deliver poll books to the School Commissioner. Ibid. p. 316, § 6.

Treasurer must give bond. Ibid. p. 317, § 9.

School Commissioners to pay over money and deliver bonds, notes, &c. Ibid. p. 317, § 10.

The Opinion of the Court was delivered by

Caton, J. This suit was brought by the County Commismissioners of Adams county against Frazier and his sureties, on his official bond as School Commissioner. The bond is in the penalty of $12,000, and is conditioned that he shall faithfully discharge the duties of his office. Breaches were assigned that, at a public sale of school lands, Taylor and Kemp had become purchasers, and had failed on the day of said sale, or at any other time, to pay for said purchases; that he had subsequently sold the same for a less price, and that he had failed to prosecute Taylor and Kemp for the difference, as he was bound to do; and also, that he had failed to pay over certain moneys to the treasurer of a certain township, which he should have done. On these breaches issues were made up, and a trial had by a jury, who returned the following verdict, to wit: "We, the jury, find for the plaintiffs and assess their damages to the sum of five hundred and seventy five dollars and seventy two cents." The defendants below moved the Court for a new trial, for which various reasons were assigned, the first of which was, that the finding of the jury was contrary to law and evidence. This motion was overruled, and the Court rendered a judgment, that the plaintiffs "recover against the said defendants the said sum of five hundred and seventy five dollars and seventy two cents, their damages aforesaid, in manner and form aforesaid by the jury assessed, besides their costs about their suit in this behalf expended." To the overruling of this motion, and in rendering this judgment, the defendants excepted, as appears by the first bill of exceptions, and this will be first considered.

This verdict was bad, both in form and substance, and upon it the Court could render no proper judgment. The jury should have found the debt, as well as damages, and then

Frazier *et al. v.* Laughlin *et al.*

the Court could have rendered a judgment for the debt thus found, and have awarded execution for that amount, with directions to be indorsed thereon, that only the amount of the damages should be collected. As no debt was found, this could not be done. In an action of debt, the judgment must be in debt. Nor had the Court a right to amend the verdict by adding the amount of the penalty of the bond as the debt; for it was as much the right of the party to have that found by the jury as any fact. It was substance and not form. Nor can this Court amend the verdict by adding what they have no doubt the verdict should have been. For this reason, at least, the Court should have granted a new trial.

By the second bill of exceptions, it appears that on the trial the plaintiffs offered in evidence a record of a bond found on the records of the County Commissioners' Court. Upon objection being made, a witness testified that he, as attorney for the plaintiffs, gave notice to Wren, one of the defendants, who was clerk of the County Commissioners' Court, to produce the bond of Frazier as School Commissioner, to be read as evidence on the trial of this cause, who told him he had searched his office for it, and could not find it. It was not produced. The Court, then, without any further evidence, permitted the record of the bond to be read to the jury. To this the defendants excepted. As Wren was the proper keeper of the bond as clerk of the County Commisssioners' Court, and he failed, on due notice, to produce it at the trial, whether it was lost or not, a sufficient foundation was laid for introducing secondary evidence of its contents. This record, as it is called, was admitted without any proof that it was a true copy, or even that an original had ever existed. There is no law, so far as my researches have extended, requiring or authorizing the School Commissioner's bond to be recorded, and hence, copying it into the record book of the County Commissioners' Court, gave that copy no more authenticity than a copy made in the records of the recorder's or Auditor's office, or in any other place. It was not, in law, a record, nor would a copy from it have been an office copy, but simply a copy of a copy. Had there been any law requiring

that bond to have been recorded, as was undoubtedly suppo-
sed by all in the Court below, the record, or a certified copy
would have been sufficient. But to have made this copy evi-
dence, a genuine original should have been shown to have
existed, and that that record was a true copy.

We will next inquire, whether the defendant, Wren, was
a competent witness, when objected to by his co-defendants.
We are clearly of opinion that he was not. Mr. Greenleaf,
in his work on Evidence, page 339, after stating that it has
been said that a party, when called by the opposite side, may,
if he choose, testify, although against the consent of his co-
party, proceeds: "But the better opinion is, and so it has
been resolved, that such a rule would hold out a strong
temptation to perjury; that it is not supported by principle
or authority, and that, therefore, the party is not admissible
without the consent of all the parties to the record, for the
privilege is mutual and joint, and not several." In *Mant* v.
*Mainwaring,* 4 Eng. Com. Law R. 48, this precise question
arose, and Burrough Justice said: "The general rule is, that
no party to an action can be examined but by consent; and
all the parties to the record must consent, and without such
consent, none can be called. In this the co-defendant object-
ed, and therefore the witness was properly rejected," and of
that opinion was the whole Court. So, also, in the *Supervi-
sors of Chenango* v. *Birdsall,* 4 Wend. 457, where the suit
was on a treasurer's bond against him and his sureties, and
the Circuit Court allowed Randall, one of the sureties, to
testify against the consent of the other defendants. This,
the Supreme Court held was erroneous, and said: "The
objection to the party being a witness is not placed on the
ground of interest; it arises from considerations of policy."
Indeed, I consider no rule better settled, than that which re-
quires all parties to consent, before any of them can be used
as a witness. Although there are some cases which seem
to indicate a contrary doctrine, there is but one English
case, at least, which may be considered in point, and that
is *Warner* v. *Jones,* 20 Eng. Com. Law R. 117; see also,
1 Greenl. Ev. 399, note. But it is suggested that this case

should be excepted from the operation of the general rule, for the reason, that the matters testified to by Wren, were facts, a knowledge of which he had alone derived in his official capacity as clerk of the County Commissioners' Court; that it was the evidence of the officer, and not of the party. If the distinction were founded in fact, or at any rate, if the information sought from the witness was strictly official, and could not be conveniently proved in any other way, I am not prepared to say that an officer thus situated might not only be allowed to testify against the consent of the co-party, but that he might be compelled to testify. He might, undoubtedly, give a certified copy of his record, which would be good evidence in the cause to which he is a party, and probably might be allowed to identify the original records, when brought into Court, and offered as evidence. In such a case, he would not become a general witness. But it will be sufficient to decide that case when it shall arise. In this case it does not. Here Wren was called upon to testify to the identity of the School Commissioner's record book of sales, of which he is not ordinarily the proper keeper. It only comes into his hands occasionally, when there is a vacancy in that office. It properly remains in the hands of the School Commissioner, who is equally, if not more competent, to prove its identity. And that course was also adopted in this case, for both the predecessor and successor of Frazier in that office were called, who abundantly identified the record. As, therefore, the same matter to which Wren testified, was sufficiently proved by other competent evidence, were this the only error in the record, we should not reverse the judgment on account of that decision. *Supervisors of Chenango* v. *Birdsall*, 4 Wend. 458.

We will next inquire whether the Court erred in permitting Laughlin to testify. It is true that his name appears upon the record, but he was not, for that reason alone, a party to the suit. The suit was brought by the County Commissioners in their corporate capacity, and the addition of the proper names of the Commissioners was entirely surplusage, and as such, they might have been stricken out at any time.

It was no more necessary that the individual names of the Commissioners should have been inserted, than it would have been to have inserted the individual names of the supervisors in the case in Wendell above referred to. After the commencement of the suit, and before the trial, Laughlin had ceased to be Commissioner, and he was undoubtedly a competent witness. Had he still continued to hold that office, it is possible that the case might have been different.

The next objection is, that the Court allowed the School Commissioner's record to be read in evidence to prove the several sales of the land as averred in the assignments of breaches. The seventh section of the Act of 1829 provides: "If any person shall purchase any tract, and not pay the money as above stated, the same shall be again offered, and if, on a second sale, the same shall not sell for so great a sum as at the first sale, the person so bidding off said tract and not paying for it, shall be liable for the difference between the first and second sale, to be recovered for the use of the township, in the name of said Commissioner, whose duty it shall be to prosecute and sue for the same in any Court having jurisdiction thereof." As the law existed when this Act was passed, the school lands were all sold for cash. By a subsequent law passed in 1833, the School Commissioner was authorized to sell on a credit in certain cases, when he should take a mortgage on the land with good personal security for the payment of the purchase money, to be approved by the County Commissioners' Court. In the breach assigned in this declaration, it is averred, that at a sale of school lands by Frazier, one Taylor became the purchaser of several tracts, but that he wholly failed and refused on the said day of sale, or on any day thereafter, to pay the said Commissioner the amount of the lands so by him purchased. It then avers a subsequent sale for a less price, and that Frazier failed to sue Taylor for the difference. There is another breach assigned similar to this, except that one Kemp was the purchaser. By this I understand that the sale referred to was made under the law of 1829 for cash. If within the time limited by law, the purchaser did not pay for the land, it was

the undoubted duty of the Commissioner again to sell the lands, and, if they brought less, it was his duty to prosecute the first purchasers for the difference. In the discharge of this duty he might, undoubtedly, in the exercise of a sound discretion, neglect to bring suit and put the township to unnecessary expense, were the first purchaser entirely irresponsible. But if he do this, he must take the responsibility of showing in his defence, that a suit would have been unavailing, or at least injudicious. If he act with the same discretion that a man of ordinary prudence would have acted in the conduct of his own affairs, he would not be liable. No such defence was set up here.

The Commissioner is required to keep "a record of all sales made, describing the land particularly, the price sold for, the time when sold, the purchaser's name and place of residence, in a clear and concise manner, in order to perpetuate and preserve the title." Such a record was kept of these sales by the defendant Frazier, and undoubtedly that record was the very best evidence, as against him at least, to prove those sales. In admitting that record the Circuit Court decided correctly. This record did not show, nor was it required by law to show, whether the sales were made for cash under the law of 1829, or on a credit under the law of 1833, and hence it was incumbent on the plaintiffs to have proved in some other way, that the sale was for cash, as this declaration, at least, implies. The defendant, however, for the purpose of rebutting any presumption which might have been raised from any proof, or the circumstances of the case, offered to prove by one McGinnis that the sales were actually made on a credit. In rejecting this evidence, the Court decided erroneously. If the sales were actually made on a credit, under the law of 1833, the declaration should have so averred, that the defendants might have been prepared to meet such averment.

As there are some doubts from the expressions used in the bill of exceptions, that the exceptions were not taken at the proper time, to the instructions given and refused, we should refrain from expressing any opinion on them, were it not that

the same questions will probably arise on another trial; and as they have been fully argued, and well considered by the Court, we think it better for all parties, that they should now be settled. I shall, however, only notice those, the principles in which have not been before settled in this Opinion.

The first instruction directs the jury, that if they find that the several sales of school lands took place as mentioned in the declaration, they should then find for the plaintiffs, the difference between the prices for which the lands sold on the first and second sales, and that they might also find, as further damages, interest on the same from the time of the last sale to the time of the trial. The latter part of this instruction was not correct, even if any interest were allowable, on this demand. Upon no principle ought Frazier to have been charged with interest on any sums which he ought to have collected, but neglected to prosecute until he could, by reasonable diligence have realized the money. The defendants can only be called upon to put the plaintiffs in as good a condition as they would have been in, had Frazier done his duty promptly. The inquiry should have been, what have the plaintiffs lost in consequence of this neglect of the Commissioner, and no more than that could they recover.

The Court next instructed the jury, that if they found that Frazier had refused to pay over certain moneys in his hands to the treasurer, which it was his duty to have done, then they should find for the plaintiffs the amount of such moneys, together with twelve per cent. interest thereon from the time of such refusal, to the time of trial. The rule here laid down in relation to interest was also wrong. The legal rate of interest, by our law, is six per cent., nor can any more be allowed, unless "the parties expressly agree upon an amount of interest, not exceeding the rate of twelve per cent. per annum." Nor could the jury allow more than six per cent. on the ground of special damage, for if the plaintiffs had suffered any special damage, they should have specially averred and proved it, to have entitled them to have recovered it.

The Court refused several instructions asked for the de-

fendants, but as the principles, which they contain, have been settled in examining other parts of this case, it is unnecessary to examine them further.

The judgment is reversed, and the cause remanded, with leave to either party to amend their pleadings as they shall be advised.

*Judgment reversed.*