WORMLEY v. THE DISTRICT TOWNSHIP OF CARROLL.

1. **Practice**: CHANGE OF VENUE: PLEADING. A change of venue, pending the filing of an answer, takes from the plaintiff the right to file a motion for default, after the time to plead has expired, in the court where the action was commenced.

2. **Evidence**: BOOK OF ACCOUNT: LIMIT OF INDEBTEDNESS. The books of the secretary of a school district, showing the amount of its indebtedness, are admissible in an action against the district upon its orders, wherein it is pleaded that they were issued in excess of the legal limit of indebtedness.

3. ——: FRAUDULENT AGREEMENT: CONSIDERATION. The defendant having alleged that the indebtedness which was the cause of action was incurred by reason of a fraudulent agreement between plaintiff and its own agents, it was competent for plaintiff to show that the indebtedness was sustained by a valid consideration.

4. **Taxation**: EVIDENCE: LIMIT OF INDEBTEDNESS. In an action upon the orders of a school district, defendant alleged that they were issued in excess of the constitutional limit of indebtedness; plaintiff offered to prove the value of certain lands upon the tax list, upon which the taxes were paid, but to which no valuation was assigned: *Held* that the evidence should have been admitted.

5. **Practice in the Supreme Court**: EVIDENCE: JUDGMENT. The Supreme Court will not inquire whether or not the judgment is sustained by the evidence, unless it shall appear either by the certificate of the trial judge or the agreement of the parties that all the evidence in the case is presented on appeal.

*Appeal from Greene Circuit Court.*

THURSDAY, APRIL 19.

ACTION on two orders drawn by the defendant on its treasurer, payable with ten per cent interest to Crocket Rebble, or

bearer, for building school house. The orders were in the usual form and dated August 21st, 1868.

The answer set up several defenses, and among others that the defendant was indebted, at the time the indebtedness was created, to an amount exceeding the constitutional limit. There was a trial to the court, finding and judgment for the defendant, and plaintiff appeals.

*G. R. Struble* and *C. L. Bailey*, for appellant.

*G. W. Payne* and *J. J. Russell*, for appellee.

SEEVERS, J.—I. This action was commenced in December, 1873, in the Circuit Court of Carroll county. On January 19th, 1874, the defendant appeared and was given until the next morning to plead, and on January 20th, 1874, the cause was continued with leave to the defendant to plead before the first day of the next term. On August 20th, 1874, the place of trial was changed on motion of the plaintiff to the Greene county Circuit Court. On September 8th, in vacation of such court, the plaintiff filed a motion for a default, which motion, on the 15th day of September, being the first day of the next ensuing term of the Greene Circuit Court after the change of the place of trial, was overruled, and defendant filed its answer. When the place of trial was changed the Carroll Circuit Court had no jurisdiction or power to entertain a motion for a default, and the defendant could not anticipate that a default would be applied for until the first day of the Greene Circuit Court. There was no error in overruling the motion for a default.

1. PRACTICE: change of venue: pleading.

II. It is made the duty of the defendant's secretary to keep a register of all orders drawn on the district treasurer, showing the number of order, date, name of the person in whose favor drawn, the fund on which drawn, for what purpose, and the amount. Code, section 1741; chapter 172, section 37, Laws of the Ninth General Assembly.

2. EVIDENCE: book of account: limit of indebtedness.

The defendant offered this book in evidence as tending to

show the amount the defendant was indebted, and plaintiff's objection thereto was overruled.

There was no error in this ruling; the book was clearly admissible. 1 Greenleaf Ev., Sec. 491.

III. One of the issues tendered in the answer was that. one of the orders sued on was issued in part payment for a

3. ——: fraudulent agreement: consideration. school house erected by Crocket Rebble, and that the contract price of said house was about $10.000, while the house in fact was not worth. more than $3,500, which was well known to the said Rebble and defendant's officers; that in pursuance of a fraudulent and corrupt agreement between said officers and Rebble, orders to the amount of about forty thousand dollars were issued in payment of said school house.

The defendant gave evidence tending to show the truth of the allegations in the answer and rested, whereupon the plaintiff offered to prove by said Rebble the value of said building when erected, what it cost and the value of the various materials of which the same was built. This evidence was rejected by the court, as we think erroneously. · The tendency of the evidence was to disprove the fraudulent agreement and combination alleged in the answer.

IV. The defendant introduced in evidence the "tax list of Carroll county, which showed an assessment of real estate

4. TAXATION: evidence: limit of indebtedness. of $124,744, not including about one-half of the lands in the county which were on the tax list and assessed to the Cedar Rapids and Missouri R. .R. Co."

The foregoing statement leaves it in doubt whether the tax list included other property than that within the defendants' territory, but this doubt is removed by the admissions of counsel in their respective arguments. It is conceded that the taxable property of the defendant, as shown by the tax lists, amounted to $124,744.

The railroad lands were listed and were contained in the said tax list, but no valuation was placed thereon; the taxes, however, were marked paid. The plaintiff sought to prove the "value of the lands so assessed, and no valuation carried

out." The court sustained an objection to said testimony because it was immaterial and incompetent.

The constitutional provision provides that the amount of the taxable property shall be "ascertained by the last state and county tax lists previous to the incurring of such indebtedness." The property was properly listed, but why no valuation was placed thereon we are not informed. But as the taxes were paid we think the value of this property should have been included in the amount of defendant's taxable property. The omission of the value only should not deprive a creditor of having such property estimated. The evidence offered tended to show such value, and we think, subject to defendant's right to show the rate per cent of the taxes and amount paid, and thus ascertaining the assessed value, the evidence was admissible.

V. There was no finding of facts by the court, nor motion for a new trial; the judgment of the court, however, was excepted to. There is no bill of exceptions embodying the testimony, nor is there any certificate or statement signed by the trial judge showing that all the evidence is before us. The abstract, however, states that all the evidence is contained therein, but it fails to show that the defendant agreed thereto. It is clear that the case was tried upon oral and written evidence, therefore the clerk could not certify that all the evidence is contained in the abstract. If, however, he could, we do not even have such a certificate.

5. PRACTICE in the supreme court: evidence: judgment.

Under these circumstances we are asked to review the decision of the court and determine whether or not the judgment is sustained by the evidence. This we cannot do because there is no certificate of the trial judge, or agreement of parties that the evidence is all before us. Code, Section 3170.

Great injustice might be done the court below if we were to hold otherwise; beside this, however, such is the plain meaning of the statute.

In view, however, of the fact there must be a re-trial, we deem it proper to say that one material question is, what

was the indebtedness of the defendant at the time the contract was made, which we understand to have been in June, 1868. That is, how much was the defendant indebted over and above that incurred under the contract? Then, what was the assessed value of the taxable property the previous year? If the contract was to be paid in orders at forty cents on the dollar this should be proved for the reason that the indebtedness under the contract might be increased as the evidence turned out to be.

REVERSED.