A. B. Sawyer, County Treasurer, Appellee, v. E. H. Stilson, O. H. Stilson, C. R. Wood, J. H. Standring, W. A. Caskell, Jefferson Yeakel, Appellants.

**County depositories:** LIABILITY OF SURETIES. A bond given by a bank, with special reference to a resolution of the county board authorizing a deposit with the bank of public funds, conditioned upon the repayment of all such funds, "now or hereafter placed in the bank or under its care or control by said treasurer," covers all deposits made by the county treasurer in the said bank prior to the time he was authorized by the board to make deposits; and the same may be recovered in an action on the bond against the sureties having knowledge of such deposits at the time.

**Same:** UNSECURED DEPOSITS: WITHDRAWALS: APPLICATION OF PAYMENT. Even if the bond did not secure deposits made by the treasurer before he was authorized to make them, still subsequent repayments on withdrawals by the treasurer will be applied by the court, in the absence of an application by the parties, to the prior unsecured deposits; for, although unauthorized they are not to be considered as personal deposits of the treasurer. And this is true whether the account with the treasurer is treated as continuous or as representing distinct debts due from the bank.

**Same:** COLLECTION OF TAXES BY DEPOSITORY BANK: DEPOSITS. Where the depository bank, as in this case, received money from its customers for the purpose of paying taxes and ordered the county treasurer to forward their tax receipts, the bank crediting the treasurer's account with the amount of such taxes and the treasurer charging the bank with the amount of the receipts forwarded, the transactions amounted to deposits by the treasurer with the bank, within the meaning of the bond, for which the sureties were liable, upon insolvency of the bank.

**Same:** ACCOUNTS OF TREASURER AS EVIDENCE OF DEPOSITS. A county treasurer is required by law and under the sanctity of an official oath to keep a true record and account of the business of his office; and his books of account so kept are admissible in evidence as *prima facie* proof of the truth of their recitals, including his account with depository banks; and are competent for the purpose of showing deposits in such banks.

**Pleadings:** AMENDMENT: LIMITATION OF TIME FOR FILING. The court has power, upon the giving of reasonable time and notice, to require the filing of amendments to pleadings within a specified time; and the striking out of an amendment subsequently filed, setting up matters of which the party must have known from the institution of the action, is not reversible error.

**County depositories:** EXECUTION OF BOND: SUFFICIENCY: LIABILITY OF SURETIES. Where the sureties on the bond of a depository bank united in its execution, the name of the bank being subscribed thereto as principal by one of such sureties, and the county having designated the bank a depository on the strength of the bond and having intrusted it with the custody of its funds, such sureties can not question the binding force of the bond any more than they could deny the liability of the bank for the fund, even if the bank's signature was not attested by its corporate seal.

*Appeal from Hancock District Court.*—HON. CLIFFORD P. SMITH and J. F. CLYDE, Judges.

THURSDAY, APRIL 7, 1910.

ACTION at law for the recovery of money on a bond. Trial to the court without a jury. Judgment for the plaintiff, and defendants (except J. H. Standring) appeal. The facts material to a determination of the case are stated in the opinion.—*Affirmed.*

*Healy & Healy, C. R. Wood,* and *Kenyon, Kelleher & O'Conner,* for appellants.

*W. H. Ramsey* and *Senneff & Bliss,* for appellee.

WEAVER, J.—The plaintiff is the county treasurer of Hancock County, Iowa, and at the time of the transactions in controversy the First State Bank of Corwith was a corporation engaged in the banking business at the town of Corwith, in said county. On February 8, 1907, the board of supervisors of Hancock County by resolution duly adopted designated said bank as a depository of public moneys, and authorized the treasurer to make deposits

therein to the amount of $20,000. To meet the requirements of the law by which depositories are authorized, the bank or the officers thereof presented a bond bearing date April 5, 1907, which was approved by the board of supervisors on May 2, 1907. Said bond is in the penal sum of $40,000, and names the First State Bank of Corwith as principal and the defendants herein as sureties. The condition of the undertaking is in the following words:

The condition of the above obligation is such that, whereas by a resolution of the board of supervisors of said Hancock County adopted in accordance with the provisions of section 1457 of the Code of 1897 and amendments thereto, on the —— day of ——, A. D. 1907, and duly entered of record as by law required, the said A. B. Sawyer, as treasurer of said county, was permitted to deposit state, county, and other public funds in the hands of the said treasurer, to the amount and sum of twenty thousand dollars, and not more, in the First State Bank of Corwith, upon its compliance with the provisions of said section 1457, aforesaid, and the laws of Iowa; whereas the said treasurer of said county has selected and designated the said First State Bank of Corwith, Iowa, as a depository of said public funds to the amount aforesaid, according to said resolution. Now, if the said First State Bank shall render a true account to said A. B. Sawyer as treasurer of said county or to the proper authority, whenever required by said officer, or by law, and promptly pay over to said A. B. Sawyer as treasurer of said county, or to the person or persons authorized by law to receive the same, whenever demanded and demand is made therefor, or the same may be needed, all of said deposists and sums of money, now or hereafter placed in said bank or left with the said First State Bank, or under its care or control by said treasurer, and any and all balances or part of said money whenever needed or demanded, as aforesaid, and shall hold the said treasurer making said deposits and the said county harmless from all loss and damage by reason of the making of such deposits and shall fully comply with all the provisions of the laws in relation thereto, then this obligation to be void, otherwise in full force.

The signature of the bank to the instrument is attached "by O. H. Stilson, President," who also signs as one of the sureties. The defendant Standring was at that time cashier of the bank, E. L. Stilson, assistant cashier, and C. R. Wood, vice-president. At the date of the resolution of the board of supervisors to which reference has been made, February 8, 1907, the treasurer already had on deposit in the First State Bank of Corwith the sum of about $9,750; the account having been opened January 8, 1907. On November 23, 1907, the bank was found to be insolvent and its doors closed. It is the claim of the plaintiff that, including the sum last above named, there had been deposited by him in said bank up to the time of its failure public moneys to the aggregate amount of $29,244.54, and that, after giving proper credit for all withdrawals and other proper charges, there remained due and owing to him on said account a balance of $12,065.98, and for this sum, with interest, judgment is sought on said bond. The answer of the defendants on which the cause was finally tried is (1) a general denial; (2) a special denial of liability for deposits made prior to the date and approval of the bond in suit and an allegation that all deposits thereafter made had been withdrawn. Other defenses were pleaded or offered, but were ruled out upon demurrer or motion, and need not at this time be more specifically mentioned. The court found the issues in favor of the plaintiff, and entered judgment against the defendants for the sum of $11,404.41 and costs, and provided for the subrogation of defendants to the rights of plaintiff as against the bank.

The exceptions taken and errors assigned are very numerous, and counsel have exercised distinguished ability and industry, as well as ingenuity, in the development of their respective theories and in the collation and discussion of authorities supposed to bear upon the law of the case. To attempt to follow them closely and review the

multitude of cases cited, approved, or criticised or distinguished would be to embody in one opinion a comprehensive treatise upon the law of principal and surety, to say nothing of all the known rules of pleadings and practice in Iowa. An examination of the record and briefs indicates, however, that, while omitting nothing and conceding very little, counsel recognize the fact that the questions which are decisive of the merits of this case are few, and to them we shall give our principal attention.

I. It will be noted from the foregoing statement that the treasurer began depositing money with the bank in January, 1907; that the bank was designated as a depository of public moneys on February 8, 1907; that the bond bears date April 5, 1907, and was approved May 2, 1907. Objection is raised that the bond can not be held to secure moneys deposited with the bank before it had been approved and accepted by the board of supervisors. So far as this objection covers the time between the passage of the resolution and the acceptance of the bond, this court has already had occasion to rule in a recent case, and reached a conclusion adverse to the position of the appellants. *Fremont County v. Bank,* 138 Iowa, 167. The bond in suit was given with express reference to the resolution authorizing the deposit, and in express terms undertakes to secure the return to the county treasury of "all of said deposits and sums of money now or hereafter placed in said bank or left with said First State Bank or under its care or control by said treasurer." Under no fair construction of this language can it be said that the sureties upon this bond did not contemplate liability thereon, except as to moneys thereafter deposited. We are also of the opinion that the bond must be treated as securing the entire account, including the moneys deposited during the month of January, 1907.

It may be true, and probably is true, that these de-

*Margin note: 1. COUNTY DEPOSITORIES: liability of sureties.*

posits were made in excess of plaintiff's authority. But they nevertheless constituted a debt or demand for the payment of which the plaintiff or the county could maintain an action. *Page County v. Rose*, 130 Iowa, 296. There is no claim that this prior deposit was unknown to the defendants at the time. On the contrary, a majority of the sureties where officers of the bank, and presumably knew of this account, and doubtless sought and secured official recognition of the bank as a depository by the board of supervisors with a view to continuing and enlarging such deposit under the sanction of the law. When, therefore, they gave a bond to secure repayment of all deposits "now or hereafter placed in said bank or under its care or control," it is apparent beyond all reasonable question that they intended to secure the entire deposit indebtedness of the bank to the treasurer without distinction as to the date when the items were made.

But, if there be any doubt on this question, there can be none upon the further question that, as to the credits to which the bank subsequently became entitled for moneys checked or otherwise withdrawn by the plaintiff, he is entitled to apply such payments or credits first to the payment of the older account. The items thus withdrawn aggregate very much more than the sum of all the deposits made before the bank was officially designated as a depository, and we think there is no rule of law which requires the court to overrule the action of the plaintiff, and compel him to apply them to the discharge of later deposits leaving the older account undischarged. The account with the bank as a matter of bookkeeping seems to have been a continuous series of entries from January 8, 1907, until the bank was closed. If it is to be considered one debt, then, of course, there is no merit in the defendant's objection; and, if there were two distinct debts due from the bank to plaintiff, he could properly apply the payments

2. SAME: unsecured deposits: withdrawals: application of payments.

upon either in the absence of direction to do otherwise. If neither party makes specific application of payments, the court will appropriate it according to the justice of the case, and this as between a debt which is secured and one which is not will ordinarily require its application to the unsecured demand, or to the first in point of time. *Fargo v. Buell,* 21 Iowa, 292; *Schoonover v. Osborne,* 108 Iowa, 453; *Bank v. Seidensticker,* 128 Iowa, 54; *Chase v. Coal Co.,* 90 Iowa, 25; *Pidcock v. Voorhies,* 84 Iowa, 705; *Illsly v. Grayson,* 105 Iowa, 685.

It will not do to say, as do counsel, that the money first deposited should be treated as the personal private deposit of the plaintiff, and therefore the withdrawals by him as county treasurer ought not to be credited thereon. It was a deposit by him as county treasurer and received by the bank as such, and, even though made without authority, it constituted a demand in favor of the county. Such being the case, the objection made in argument to the relevance of the law governing application of payments can not be upheld.

II.   The great bulk of the deposit for which a recovery is asked in this case is shown to have been the accumulation of moneys received from property owners in the vicinity for payment of taxes. The bank, as is common in this state with banks remote from the county seat, appears to have done considerable business as a tax-paying agent— receiving money for that purpose from its customers, and ordering their tax receipts from the county treasurer. It was the custom of the plaintiff on receiving an order of this kind from the bank to make out and send the receipts as requested charging the amount thereof to the bank as a deposit, while the bank entered on its books a corresponding credit to the treasurer for the moneys so collected. Appellants' counsel argue very strenuously that these transactions do not amount to "deposits" within the meaning

3. SAME: collection of taxes by depository bank: deposits.

of the bond. It is said, in substance, that, when the treasurer sent a tax receipt and charged the amount to the bank, it was in effect the mere sending out of a collection, and that a deposit by the treasurer can only be made by his delivering and the bank receiving actual money or its equivalent to be returned to him in like kind. But we must not permit ourselves to be lost in a maze of technical definitions, but look rather to the substance, the essence of the transaction. The treasurer was not sending out tax receipts for collection in any just sense of the word. He sent them out only on the order or call of the bank, and such order or call was in effect a representation or statement that the bank had received the money. If such was not the case, and the money was not paid into the depository by the taxpayers whose receipts were called for, it would seem to be a matter of affirmative defense, which need not be negatived in advance by the plaintiff. Except as to a few found in the bank at the time of its failure and for which the trial court denied a recovery, there is not the slightest showing in the record to cast doubt upon the proposition that every tax receipt so ordered represented the actual amount therein stated in actual dollars and cents paid into the depository for the credit of the treasurer. When the money was received into the depository for the benefit of the county treasury, it was no less a deposit by the treasurer than it would have been had the payment been made to the treasurer direct, and he had then with his own hand delivered or remitted it to the bank.

It would be folly, in view of the well-known methods by which such business is carried on and the intimate relation existing between the bank and its sureties, to suggest the possibility that the parties did not intend the bond to secure a proper accounting for moneys so received. The receipts represented cash for which the plaintiff as treasurer was bound to account, and under the

circumstances surrounding the transactions we see no good reason why the bank is not chargeable, *prima facie* at least, with the amount thereof as cash, precisely as would be the case had the treasurer remitted such amount in checks, drafts, or other equivalents of money. A very similar question was before the Supreme Court of Indiana in *Wasson v. Lamb*, 120 Ind. 514 (22 N. E. 729, 6 L. R. A. 191, 16 Am. St. Rep. 342), and the rule there applied is in harmony with the conclusion here expressed.

III.    Other points made for a reversal of the judgment below must necessarily be treated with brevity. The court admitted in evidence the books of the treasurer showing the charges made against the First State Bank of Corwith, and upon this ruling error is assigned. The objection made to the books is, in substance, that the charges therein shown are not such as are ordinarily the subject of book account. Conceding, for the purposes of this case, that as between two private individuals there might be merit in such objection, we think the rule has no application here. The county treasurer is by law required to keep a true record and account of the business of his office. This, we think, includes keeping a strict and detailed account of his dealings with the depositories of the treasury, and every item which affects the debit of a depository on the one hand or its credit on the other—whether it be a cash item or tax receipt or other matter or thing which is necessary to be considered in determining the real status of the business at any given date is a proper subject for entry upon the books of the office—and such books are competent evidence of the matters so officially recorded. Were it otherwise, there would often be a complete failure of proof of matters and things of the highest importance, and public interests would thereby be greatly imperiled. The treasurer could not possibly carry in his memory all the multitudinous transactions of his office. His office is temporary

4. SAME: accounts of treasurer as evidence of deposits.

in character and filled by different persons in succession, but the treasury and its records are continuous and permanent. The books are not like ordinary books of account, the mere private memoranda of the individual making them, but they are the books of the county, made under the sanction of an official oath in the performance of a statutory duty, and, so far as we are aware, their admissibility as *prima facie* proof of the truth of the showing there contained is everywhere upheld. *Cabot v. Walden,* 46 Vt. 11; *Lawrence v. Dunkle,* 35 Mo. 395; *Lycett v. Wolff,* 45 Mo. App. 489; *United States v. Kuhn,* 4 Cranch (C. C.), 401, Fed. Cas. No. 15,545; *Nye v. Kellam,* 18 Vt. 594; *Frazier v. Laughlin,* 6 Ill. 347; *Wormley v. Dist. Twp.,* 45 Iowa, 666; *Gage v. Parker,* 103 Ill. 528.

IV. This action was begun February 6, 1908. For a period of nearly three months the record appears to be plentifully besprinkled with successive pleadings, amendments, demurrers, and motions, until on April 29, 1908, the court entered an order requiring the parties to have all desired amendments filed on or before May 24, 1908,

5. PLEADINGS: amendment: limitation of time for filing.

after which time no further amendment would be allowed except to conform to facts proved on the trial. On May 9th defendants filed another amended and substituted answer setting up four separate defenses. One day after the time limit expired, an amendment to the answer setting up a fifth defense was filed without leave. Again, on June 3d, when the case was called for trial, another amendment pleading a sixth defense was filed without leave. Both of these amendments were stricken on motion of the plaintiff, and subsequent application for leave to refile then denied. In this there was no reversible error. The matters sought to be thus pleaded were in their nature such as must have been known to the defendants during all the time the case had been pending and no good reason was shown why, if thought important, they had not been of-

fered. The court had given reasonable time and reasonable warning, and it was justified in insisting that the sparring over issues come to an end and the case proceed to trial on its merits.

V.  The name of the bank was subscribed to the bond by "O. H. Stilson, President." It is conceded that he was then the president and executive officer of the bank and the genuineness of his signature is not questioned, but it is said that, the signature not being attested by the corporate seal of the bank, the instrument is not the act of the corporation, and no action can be maintained thereon against the sureties. There is no merit in the objection. The defendants united in executing a bond as sureties for the bank, the name of which (whether with or without authority) was subscribed to the paper as principal by one of their number. On the strength of that bond, they induced the county to designate the bank as a depository, and to intrust it with the custody of public moneys. The bank could not be heard to deny its liability to account for such funds, and, if so, then upon familiar principles the defendants who undertook to insure such accounting have no standing to deny the binding force and effect of their contract.

6. COUNTY DE-
POSITORIES:
execution of
bond: suffi-
ciency: lia-
bility of
sureties.

VI.  Error is assigned upon the ruling of the trial court striking from the files a cross-petition, also upon the admission of certain testimony offered by the plaintiff. Some of the points made are governed by the conclusions already announced, and in none do we find any reversible error.

The judgment of the district court is *affirmed.*