GEORGE W. JOHNS et al.

v.

E. E. McKIBBEN.

*Filed at Mt. Vernon April 2, 1895.*

1. TRIAL—*question of possession of land in ejectment is for the jury.* The question whether there has been actual possession of land, for the purpose of establishing adverse possession under the Statute of Limitations, is one of fact, for the jury.

2. ADVERSE POSSESSION—*occupancy of part under deed is occupancy of whole.* The visible and exclusive appropriation of a part of a tract of land, claiming the whole, under color of title or deed purporting to convey the whole, is in law an actual possession of the entire tract, except so far as there may be possession by others.

3. SAME—*what is sufficient payment of taxes under Statute of Limitations.* Payment of taxes for the last of the seven years required by the statute to constitute title by payment of taxes under claim and color of title, is made by payment to the tax collector, although the holder of the record title has previously given his check to the brother of the tax collector, who had the tax book in his hands, but did not pay over the check until subsequently.

4. SAME—*acts which will constitute possession under Statute of Limitations.* Cutting and deadening timber and piling brush on a tract of swamp and overflowed land, clearing a portion of it and cutting out a fence row, making rails and railroad ties, with other acts evincing dominion and an intention of clearing out part of the land, are actual possession, which, under color of title, will set the statute running.

APPEAL from the Circuit Court of Wayne county; the Hon. S. Z. LANDES, Judge, presiding.

This was ejectment, in the circuit court of Wayne county, by appellants, against appellee, to recover the possession of the north half of the south-east quarter of section 2, township 3, south, range 9, east, in said county. The realty in dispute was originally swamp land. The plaintiffs claimed to be the owners in fee simple, and by stipulation of the parties it was shown that under the acts of Congress of September, 1850, authorizing certain States to re-claim swamp and overflowed lands within

their respective borders, and an act of the General Assembly of Illinois approved January 22, 1852, providing for the disposition of such lands within this State, title to the land in question vested in one Daniel L. McCauley, plaintiffs' remote grantor, which conveyance was evidenced by a deed of May 7, 1864, from Wayne county to said McCauley, and that by various *mesne* conveyances in chain the plaintiffs acquired the title thus derived from the United States. The defendant introduced in evidence a quit-claim deed to himself of the land, dated January 18, 1886, recorded January 23, 1886, from one James Mahon, who claimed title under a tax deed, and produced evidence showing possession, under his said deed, from the spring of 1886, and the payment of taxes thereon for seven successive years, as a bar to the plaintiffs' right of recovery. By agreement of the parties trial by jury was waived and the cause submitted to the court. A judgment was entered finding the defendant not guilty.

CREIGHTON & KRAMER, and R. P. HANNA, for appellants.

H. TOMPKINS, and J. M. CAMPBELL, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This action was brought to the October term, 1893, of the Wayne circuit court, and it was shown, and in effect conceded, upon the trial, that the plaintiffs in ejectment were the owners of the connected chain of title, and, unless barred by limitation, entitled to recover the land. The defendant, to maintain the issues on his part, introduced in evidence a quit-claim deed from James Mahon, dated January 18, 1886, recorded January 23, 1886, purporting to convey to defendant the entire south-east quarter of section 2, township 3, south, range 9, east, in

Wayne county. That said deed under which defendant claimed title to the land in question, being the north half of said quarter section, was claim and color of title made in good faith, does not seem to be questioned. The defendant also introduced evidence to show that he entered into actual possession of the land under his deed in the spring of 1886, and has since continued in such possession, and paid the taxes assessed for the years 1885, 1886, 1887, 1888, 1889, 1890, 1891 and 1892, inclusive. It is practically conceded that the defendant was in the actual possession, continuously, for the period of seven years, if the facts and circumstances proved were sufficient to show that he entered into and was in such possession as early as the spring of 1886. In other words, the first question arising in this case is in respect of the possession by defendant in 1886, and it is strenuously insisted by counsel for appellants that the evidence failed to establish such possession by the defendant in the year 1886 as is necessary to make out the full term of seven years before the commencement of the action, and to complete the bar of the statute.

The section of the statute referred to, requires that the possession of land thereunder be actual, and the question of whether there has been such possession in any given case is one of fact, for the jury to determine from the evidence and circumstances shown. As said in *Morrison* v. *Kelly*, 22 Ill. 609: "What acts may or may not constitute a possession are necessarily varied, and depend, to some extent, upon the nature, locality and use to which the property may be applied, the situation of the parties, and a variety of circumstances necessarily have to be taken into consideration in determining the question. They must necessarily be left to the jury, whose peculiar province it is to pass upon the question of possession.—*Ewing* v. *Burnett*, 11 Pet. 53." Actual occupancy of the entire tract is not to be deemed indispen-

sable or necessarily essential. In the case just quoted from the court said (p. 624): "And to constitute such a possession there must be such an appropriation of the land to the individual as will apprise the community in its vicinity that the land is in the exclusive use and enjoyment of such person. * * * But it has been held that neither actual occupancy, cultivation or residence are necessary to constitute actual possession. (*Ewing* v. *Burnett*, 11 Pet. 53.) And when the property is so situated as not to admit of any permanent useful improvements, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim, has been held to be such possession as will create a bar under the Statute of Limitations." And it has accordingly been held in a large number of decided cases in this court, that the visible and exclusive appropriation of a part of a tract of land, claiming the whole, under color of title, or a deed purporting to convey the whole, is, in law, an actual possession of the entire tract, except so far as there may be adverse possession. (*Brooks* v. *Bruyn*, 18 Ill. 539; *Prettyman* v. *Wilkey*, 19 id. 235; *Hardisty* v. *Glenn*, 32 id. 62 ; *Austin* v. *Rust*, 73 id. 491 ; *Coleman* v. *Billings*, 89 id. 183 ; *Keith* v. *Keith*, 104 id. 397; *Lancey* v. *Brock*, 110 id. 609; *Railway Co.* v. *Nugent*, 152 id. 119.) A consideration of the cases cited will show that it has generally been held that if there is a continuous dominion, manifested by continuous acts of ownership, it is sufficient to establish an actual possession under the statute in question, and that an actual residence is not indispensable. (*Coleman* v. *Billings, supra; Kerr* v. *Hitt*, 75 Ill. 51.)

The evidence shows that the land in question was swamp and overflowed timber land, and, until the defendant entered into possession thereof, vacant and unoccupied. While it is apparent that the land was not

fenced until in 1887, the testimony of at least a half
dozen witnesses corroborated that of the defendant, and,
in our opinion, established the fact that he went into the
actual possession of the land in the early spring of 1886.
This evidence shows that in February and March of that
year he cut and deadened timber and piled brush on the
land, cleared some five or six acres in the early spring
on the east forty, and on the west forty cut out a fence
row about a rod wide, some distance down to the river,
made rails and railroad ties, and performed other acts of
ownership evincing dominion and an intention of clearing
out at least part of the land and getting it in a con-
dition for cultivation.    The defendant testified that he
entered upon the land in January, 1886, and commenced
to clear it up.    "I cleared the timber off of five or six
acres the first year, but did not make any fences.    The
next winter and spring I fenced about fifty acres.    The
fence does not extend all around it.    Next to the river
I did not fence.    The five or six acres I cleared the first
winter or spring were in the north-east corner of the east
forty.    I cleared some in a slough that runs pretty near
east and west, and I cleared some on a little ridge in the
corner that runs pretty near to the slough.    I did nothing
on the west forty except to cut a fence row down to the
river."    Leonard Dennis testified : "I know the land in
dispute.    E. E. McKibben took possession of the land in
1886.    The first I knew of his possession was in February
or March—I could not say for certain which.    He dead-
ened four or five or six acres, and cleared it up.    I live
on adjoining farm to the east side of it.    I think McKib-
ben cleared out a fence row on the north line of the
north-east forty, for about thirty or forty rods, in the
spring of 1886.    He made rails in November or December,
1886.    He did not do any fencing in 1886.    The fence row
was cleared out to the river."    To the same effect was
the testimony of witnesses Mitchell, Seifert, Jones and

the three McKibbens. To controvert this evidence the plaintiffs introduced testimony in rebuttal, which tended to show that the date of the clearing, and other acts of possession by the defendant, could not have been earlier than the spring of 1887. While the evidence may be regarded in some respects as conflicting, the court below had the opportunity to see the witnesses, hear them testify and to judge of their credibility. In our opinion, if the witnesses for the defendant were to be believed, there was abundant evidence to show that the defendant was in possession of the land in question in the spring of 1886, and the court having, by its judgment, so found, we are not disposed to disturb that finding.

It is next insisted that the defendant did not pay the taxes, as required by the statute,—that is to say, that the payment of taxes in 1886 for the year 1885 could not accrue to the benefit of defendant, under the statute, for the reason that he had no color of title in 1885, and was required to pay all taxes *assessed* within seven years after he obtained his deed.

In respect of the first contention, it need only be said that the defendant showed, by the receipts produced in evidence, that he paid the taxes assessed against the land in 1886, 1887, 1888, 1889, 1890, 1891 and 1892, inclusive, payment of the taxes for the latter year being evidenced by a tax receipt dated January 9, 1893,—some months before the commencement of this suit. It is therefore clear, that unless, as contended, the plaintiffs paid the taxes for 1892, the defendant paid them for seven successive years, under claim and color of title acquired in good faith, leaving the year 1885 entirely out of the calculation.

But it is contended that the evidence shows that the plaintiffs paid the taxes for 1892, and that the defendant's payment thereof was subsequent, and therefore unavailing. It appears, from the evidence, that the plaintiff Kramer called on Craven, the tax collector,

and expressed a desire to pay his taxes. The collector told him he had not received his books yet, but had told his (the plaintiff's) brother, R. J. Kramer, to call on the county clerk and get them for him, and that he could pay his taxes to his brother. During the brief time R. J. Kramer had the books he collected something between $400 and $500 in checks, which he delivered to the collector the following Sunday, with the books, receipts, etc. The books showed that taxes had been paid by the Kramers, Boggs and Johns, and were marked "paid" opposite the lands, respectively, paid on, and said R. J. Kramer produced to the collector the receipts therefor, all made out ready for signature, but did not pay over to the collector the checks received by him until the following Monday evening. On Monday morning William McKibben called to pay the taxes on the land in controversy, for his brother, E. E. McKibben. The collector then became apprised, for the first time, that the taxes on that land were marked "paid." The collector undoubtedly might receive a check as payment, and if so received the transaction would constitute a valid payment of the taxes. It is clear, as we think, that at the time when McKibben paid the taxes in money the collector had not received and accepted the check of Kramer as a payment of the taxes. He testifies that he would have received it in payment, but it is clear he did not do so, if, indeed, he had any knowledge of intended payment on this land by such check at the time he received payment from McKibben. Under the facts shown, it must be held that the payment by McKibben was a valid payment of the taxes for the year 1892, thereby completing the bar of the statute. McKibben paid the taxes on the land, and the collector erased the mark which had been made by Kramer, and entered "Paid by McKibben & Co.," accordingly. Monday evening, when the collector counted up, he had the excess paid him by McKibben,

and settled the matter, as appears by his testimony and that of R. J. Kramer, by keeping the check and paying back to Kramer the money received from McKibben.

It is familiar doctrine that the collector has no authority to receive anything in payment of taxes except money. He can not be required to receive a note or check on a bank, for such check would be only a conditional payment. Cooley on Taxation, 452.

Finding no substantial error in the record, the judgment of the circuit court will be affirmed.

*Judgment affirmed.*