## Heath, et al. v. Hazelip, et al.

(Decided June 19, 1914.)

### Appeal from McCracken Circuit Court.

1. Statutes—Power of Legislature as to Remedial Legislation—When It May Be Retrospective.—It is competent for the Legislature in enacting a statute merely relating to the remedy for enforcing a contract or right, to give it retroactive effect, provided it does not impair the obligation of the contract or a right that has become vested. Yet another restriction on the exercise of this power of the Legislature is that it cannot by statute remove a bar of limitation which has already become complete.

2. Statutes—Statutes of Limitation Relate Only to the Remedy—When May Be Altered or Repealed.—Statutes of limitation relate only to the remedy, and may be altered or repealed before the statutory bar has become complete, but not after so as to defeat the effect of the statute in extinguishing rights of action; but they cannot limit existing claims without allowing a reasonable time after their passage for parties to bring an action, what is a reasonable time to be determined by the court.

3. Limitation of Actions—Application of Above Rule to the Case in Hand—Effect of.—Applying the rule above stated to the facts of the instant case, we conclude that as the action, which was one to enforce a lien for the recovery of money paid by purchasers at a tax sale, was instituted by them only 7 months and 10 days after the present or new statute of limitations became operative, and 2 years, 10 months and 20 days before the limitation of 15 years prescribed by the previous statute expired, that it was instituted within a reasonable and proper time after the new statute went into effect; hence the circuit court did not err in holding that the

action was not barred by the present statute of limitations of 5 years.

MILLER & MILLER for appellants.

HAZELIP & KAHN for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action, as originally brought, was one of eject-ment wherein the appellees, T. N. Hazelip and C. W. Emery, sought to recover of the appellants, Martha J. Heath and F. P. Simpson, three parcels of land in Mc-Cracken County. It was alleged in the petition that ap-pellees were the owners of the lands but that they were wrongfully in the possession of the appellants; the ap-pellant Heath claiming to own the second and third par-cels, and the appellant Simpson the first parcel, by pur-chase from her.

It further appears from the averments of the peti-tion that the three parcels of land in question were as-sessed for State and county taxes, collectible in and for the year 1898, as the property of the appellant, Martha J. Heath, then known as Martha J. Bradley, but the taxes thus assessed not having been paid, the sheriff of Mc-Cracken County December 12, 1898, sold the lands in satisfaction thereof, at which sale they were purchased by the State and county and, not having been redeemed by the owner within two years after their sale, they were, as provided by section 4154, Kentucky Statutes, by di-rection of the Auditor of the State, on April 10, 1911, publicly sold by W. M. Husbands, revenue agent, at the courthouse door in the city of Paducah and appellees, be-ing the highest and best bidders at that sale, became the purchasers of the three parcels of land at the price of $84.01, the amount of taxes with interest, penalties and costs due the State and county thereon. This sale was reported to the Auditor and, appellees having paid him the amount due upon their purchase of the lands, he on December 31, 1912, by proper deed, duly conveyed them to the appellees.

By an amended petition appellees asked that in the event the circuit court should be of opinion they had not acquired a good title to the lands under their deed from the Auditor, it adjudge them a lien upon the lands for the amount they paid the Auditor for them, with interest

from the date of such payment and the costs of the action.

The appellants' answer, as amended, interposed the following grounds of defense: (1) That on the second day of May, 1898, the appellant, Martha J. Heath, paid to the clerk of the McCracken County Court all taxes "due or that are claimed to be due or owing to said county and State" upon the lands in question and other property she owned in the county of McCracken, which payment included the tax for which the sheriff claimed to have sold the lands in December, 1898; (2) that the appellant, Simpson, purchased and by deed of March 5, 1898, obtained title to the tract of land first described in the petition as 83 acres, at which time there were no taxes due thereon to the State or county, and that the land was thereafter listed by him year by year for taxation and the taxes by him paid thereon; (3) that the amount of tax due on the lands for the year 1898 was not $84.01 as paid by appellees to Husbands, the revenue agent, but was only $16.02 for the county and $11.51 for the State, making a total of $27.53, and that for this tax there should have been no sale of the land because of its previous payment to the county clerk; (4) that "more than five years elapsed since the taxes claimed became in arrears, and more than fifteen years since they became first in arrears, and since they were paid," for which reason appellees' claim thereto is barred by the statute of limitations. All affirmative matter of the answer was controverted by reply.

A trial by jury was waived and the case submitted to the court upon the pleadings and proof for trial and judgment. By the judgment rendered the circuit court set aside the sale made by the revenue agent, at which appellees became the purchasers, and the deed made them by the Auditor, but adjudged appellees entitled to recover $79.05, declaring this amount and not $84.01, to be the correct amount of tax, penalties, interest and cost due on the lands at the time of their sale by the revenue agent. Upon the $79.05 thus recovered by appellees they were allowed interest at six per cent per annum from April 10, 1911, until paid, and costs of the action; for which amount, interest and costs appellees were given a lien upon the three tracts of land in controversy, which were adjudged to be sold, or enough thereof, to pay same. After the circuit court filed its separate conclusions of law and fact appellants filed a motion and grounds for a

new trial, and same having been overruled, they have appealed.

In our opinion the circuit court's separate conclusions of law and fact are supported by the evidence. There can be no doubt from the evidence that in December, 1898, the sheriff sold the lands in question for the State and county tax properly assessed against and due upon them for that year, then amounting in the aggregate to about $27.00, exclusive of the penalties and costs of sale. It is equally clear that at that sale the lands were bought in by the State, and also manifest that in April, 1911, W. M. Husbands, revenue Agent, by direction of the Auditor of the State, advertised and sold the lands, at which sale they were purchased by appellees at the price of $84.01, to whom they were later deeded by the Auditor. It is not claimed by appellants that they or either of them, within two years next after their sale by the sheriff, or at any time, redeemed the lands by paying to the State and county the taxes, interest, penalties and costs due them, respectively. This being true, the lands, at the expiration of the two years, became forfeited to the State and it was the duty of the Auditor to direct their sale by the revenue agent in order to obtain what was due the State and county by way of taxes for the year 1898, together with the accrued interest, penalties and costs, for in no other way could the county and State be made whole.

It is true Mrs. Heath claims to have paid, May 2, 1898, to the then clerk of the McCracken County Court, all taxes due upon these lands for the years 1897 and 1898; and there was evidence conducing to prove this payment and also evidence to a contrary effect. However, no receipt from the clerk was produced by Mrs. Heath, and Husbands, the revenue agent, testified that though she exhibited to him a receipt from the clerk just before the lands were sold by him in April, 1911, as directed by the Auditor, the receipt showed the payment of the tax to the clerk only for the year 1897 and made no mention of the tax for the year 1898. Moreover, we are unable to understand why Mrs. Heath should have paid the tax on the lands for 1898 in May of that year, to the clerk, who had no authority to receive it, instead of paying it to the sheriff, upon whom section 4129, Kentucky Statutes, imposed the duty of collecting it, and who then had the taxes of the county and State for that year in his hands for collection. In May, 1898, the taxes

collectible on the lands for that year were not so in arrears as to make Mrs. Heath delinquent, nor could they become so until December 1, 1898. (Kentucky Statutes, section 4148.) The clerk then had no authority to receive the tax, and its payment to him was not a payment to the State or county. Following the sale of the land for taxes and within two years thereafter the owner may redeem it by paying to the clerk of the county court the amount of the tax for which it was sold, together with interest, penalties and costs of sale. In such case sections 2151-2, Kentucky Statutes, makes it his duty to receive the money so paid, but he is wholly without authority to collect or receive taxes while they remain in the hands of the sheriff for collection. It is manifest, therefore, that the payment of the tax by Mrs. Heath in May, 1898, to the county clerk, if made, did not relieve her from paying it to the sheriff.

In James, Auditor, etc. v. Blanton, etc., 134 Ky., 803, we held that where the State bids in land at a tax sale, as provided in sections 4151-2, Kentucky Statutes, it acquires a lien for the tax and penalty until the expiration of two years, at which time, if the land has not been redeemed, the fee simple title is made by section 4154, Kentucky Statutes, to vest absolutely in the State; and further, that where land was bid in by the State for delinquent taxes on April 24, 1893, and the fee simple title vested in the State two years thereafter, namely, April 24, 1895, because of the owner's failure to redeem the land, such title was not lost by limitation until after the expiration of fifteen years from April 24, 1895. It is, however, insisted for appellants that the limitation of fifteen years cannot be applied in this case because the Legislature, by an act approved March 12, 1912, limited to five years the time in which the enforcement of tax titles and tax liens may be affected. The act in question reads as follows:

"Section 1. No action or other proceeding for the enforcement of any lien for taxes or for recovery of possession of any property which has been sold for taxes shall be maintained unless such action or proceeding is commenced within five years from the date on which said taxes became in arrears."

"Section 2. All laws and parts of laws in conflict herewith are hereby repealed."

In order to sustain this contention it will be necessary to give the statute *supra* a retrospective effect, and whether this should be the construction given it remains to be determined. As the lands were sold by the sheriff December 12, 1898, for the State and county taxes of that year, appellants had until December 12, 1900, to redeem them, but having failed to redeem them the tax then became in arrears and the title to the lands vested in the State. On April 11, 1911, ten years and four months thereafter, the lands were purchased by appellees of the revenue agent, but they were not conveyed them by the auditor until December 31, 1912; and on January 22, 1913, appellees brought this action to recover them, or the money they paid for them, for which they asserted a lien. In the meantime appellants remained in possession of the lands. The act of March 12, 1912, did not go into effect until June 12, 1912, a year and two months after appellees' purchase of the lands, but six months before they received their deed and seven months before their action was instituted. It is manifest, therefore, that at the time the act of March 12, 1912, went into effect, viz., June 12, 1912, appellees' cause of action for the money paid by them to the revenue agent for the lands in controversy had not been barred by the Statute of Limitations of fifteen years, which, in James, Auditor, v. Blanton, *supra,* was held to apply. In point of fact the Statute of Limitations began to run December 12, 1900, on which date the taxes for which the lands were sold by the sheriff became in arrears, and will not have reached the end of the fifteen years until December 12, 1915, or two years, ten months and twenty days after the institution of appellees' action.

As a proposition of law it cannot be denied that it is competent for the Legislature to change the period of limitations as to all claims not already barred, and in doing so may give the statute a retrospective effect, provided that it does not impair the obligation of a contract or a vested right. Yet another restriction on the exercise of this power is that the Legislature cannot remove a bar of limitation which has already become complete, and that no limitation shall be made to take effect on existing claims without allowing a reasonable time for parties to bring actions before their claims are abso-

lutely barred by the new statute. In Wood on Limitations, section 11, it is said:

"Before proceeding to discuss the numerous questions arising under these statutes it is advisable to ascertain how far, under the clause of the Constitution providing that no state shall pass any law impairing the obligation of contracts, the legislatures of the several states may impose or vary limitations affecting contracts then existing. It may be said that, as the obligation of a contract is the law that binds the party to perform his undertaking and consists in the power and efficacy of the law which applies to and enforces the performance or the payment of an equivalent for non-performance, and as the obligation does not inhere and subsist in the contract itself *proprior vigore,* but in the law applicable to the contract, rights acquired and vested under a statute cannot be divested by a repeal or modification thereof. But as statutes relating merely to the remedy upon a contract do not give vested rights or impair the obligation of contracts, the remedy of a party upon an existing contract may be changed, although the law affecting the change affects actions then pending. Statutes of limitation relate only to the remedy, and may be altered or repealed before the statutory bar has become complete, but not after, so as to defeat the effect of the statute in extinguishing rights of action; but they cannot limit existing claims without allowing a reasonable time after their passage for parties to bring an action.* * *" Hyman v. Bayne, 83 Ill., 256; Dyer v. Gill, 32 Ark., 410; Pearsall v. Kenan, 79 N. C., 472; People v. Wayne, Circuit Judge, 37 Mich., 287; Sampson v. Sampson, 63 Maine, 328; Johnson v. Railroad Co., 64 N. Y., 416; Dale v. Frisbie, 59 Ind., 530; Bratton v. Guy, 12 S. C., 42; Bronson v. Kenzie, 1 How. (U. S.), 311; Barnitz v. Beverly, 163 U. S., 118; Shapleigh v. San Angelo, 167 U. S., 646; Sohn v. Watterson, 17 Wal. (U. S.), 596.

Our meaning is concisely stated in the following excerpt from Bronson v. Kenzie, *supra:*

"Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of a contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the Constitution."

In 25 Cyc., 994, it is said on this subject:

"When the statute declares generally that no action, or no action of a certain class, shall be brought, except within a certain limited time after it shall have accrued, the language of the statute would naturally make it apply to past actions as well as to those arising in the future. But if an action accrued more than the limited time before the statute was passed, the literal interpretation of the statute would have the effect of absolutely barring such action at once. Such an intent would be unconstitutional, and it will be presumed not to have been in the mind of the Legislature. To avoid such a result and to give the statute a construction that will enable it to stand different modes have been adopted by the various courts. One is to make the statute apply only to causes of action arising after its passage, thus leaving all actions existing at the passage of the act under the operation of prior limitation laws or without any limitation whatever. On the other hand, the rule is frequently laid down that inasmuch as statutes of limitation affect the remedy only, the statute in force at the time of suit brought governs the case and operates in the absence of saving clauses on causes of action accruing prior to its passage. And in giving effect to this view, the rule adopted in some jurisdictions is to construe the statute as applying to such existing actions as have already run out a portion of the statutory time, but which still have a reasonable time left for prosecution before the statutory time expires—which reasonable time is to be estimated by the court, leaving all other actions accruing prior to the statute unaffected by the statute, while the construction adopted by many other courts is to consider the statute as affecting existing causes of action only from the time when they are first subjected to its operation, unless at least they are sooner barred under the old law."

An examination of the decisions of this court will furnish no case, involving the question under consideration arising upon such a state of facts as are here presented, which can be said to manifest a radical departure from the doctrine announced by the authorities *supra.* Indeed, none of them actually sustains the contention of appellants' counsel. In Long v. City of Louisville, 97 Ky., 367, it was merely held that the repeal of the old charter of that city did not have the effect to repeal its right to sue for taxes, assessed and levied thereunder, which remained unpaid after the repeal; nor to repeal

the jurisdiction of the courts in actions for taxes brought prior to or pending at the time of the repeal of the old charter. In Lawrence v. City of Louisville, 96 Ky., 595, it was held that the right to plead a statute of limitations becomes a vested right when the bar is complete, and cannot be taken away by a subsequent repealing statute. And this is true, whether the cause of action arises *ex contractu* or *ex delicto*. In Ashbrook v. Quarles' Heirs, 15 B. Mon., 20, which was an action in ejectment, one of the questions presented was whether the limitation contained in the Revised Statutes or that prescribed by the previous law governed. With respect to this question the court said:

"Upon this question there is no difficulty. This action, it is true, was commenced in 1853, after the Revised Statutes were adopted and went into force. But the cause of action had previously accrued, and it is expressly declared by section 1 of article 1 of the chapter on Limitations of Actions and Suits, page 458, that the provisions of this chapter shall not apply to cases in which the right of action had previously accrued, but the laws of limitation then in force shall be applicable to such cases."

In Lockhart v. Yeiser & Co., 2 Bush, 231, the question involved was whether a judgment, upon which there had been no execution issued for more than fifteen years, was barred by the statute of limitations, and in holding that it was, the court said:

"That the question falls within the amendment to chapter 63 of Revised Statutes, approved May 31, 1865 (Mayor's Sup., 295), there can be no doubt. By the third section of this amendment it was not to take effect for one year; but when it went into operation it was to have a retroactive bearing; that is, the limitation of fifteen years was to apply to judgments and executions. One year was a reasonable time to give all parties that they might prosecute their suits and avoid the effect of the statute, at least we cannot say it was unreasonable and denounce the statute as conflicting with the Constitution for that reason. Prospective limitation acts have been heretofore upheld by this court and have always been so sanctioned when reasonable time was allowed before they went into operation."

Without further elaboration of the subject the following may be stated as a safe rule: Where, by the en-

actment of a new statute, the period of limitation is shortened before a cause of action is barred, the reasonable time thereafter in which an action may be brought is to be determined by the court in which it is instituted, but in no event should it be extended beyond the length of time remaining in which the action could have been brought under the old statute, not to exceed the time allowed by the new statute.

Applying the rule thus stated to the facts of this case we conclude that, as the action was instituted by appellees only seven months and ten days after the present or new statute of limitations became operative, and two years, ten months and twenty days before the limitation of fifteen years, prescribed by the previous statute, expired, it may well be said that it was instituted within a reasonable time after the new statute went into effect; hence the circuit court did not err in holding that the action was not barred by the present statute of limitations of five years.

Judgment affirmed. Whole court sitting.