E. I. RUNDEL et al., Appellees, v. BOONE COUNTY et al., Appellants.

**TAXATION:** Payment of Taxes—What Constitutes Legal Payment.
The act of a county treasurer in forwarding to a banker officially signed tax receipts, with implied authority to the banker to deliver the receipts to the various taxpayers, on payment to the banker of the amount called for by the respective receipts, and the act

of the taxpayer in paying the amount and receiving his receipt, constitute a legal payment of the taxes, even though, because of the insolvency of the bank, the county treasurer never actually received the money.

**Headnote 1:** 37 Cyc. p. 1158.

*Appeal from Boone District Court.—*SHERWOOD A. CLOCK, Judge.

NOVEMBER 22, 1927.

Action to enjoin the defendants from selling land of the plaintiffs' at delinquent tax sale, the plaintiffs contending that the taxes upon their respective tracts of land had been fully paid. The court granted the relief sought.—*Affirmed.*

*Dyer, Jordan & Dyer* and *Walter Canaday,* for appellants.

*Frank Hollingsworth,* for appellees.

FAVILLE, J.—The town of Bouton is located in Dallas County, near the line between said county and Boone County. A bank was located in said town, called the Farmers Trust & Savings Bank of Bouton. A large number of the customers of said bank were farmers, living in Boone County. The appellant Wilder, during the year 1923, was the county treasurer of Boone County, and during said year kept an account in said bank, of public funds belonging to Boone County. The account was carried in his name, as county treasurer of said county. The bank had not been designated as a depositary of public funds belonging to Boone County by the board of supervisors of said county, and had not given any bond as such depositary. The record establishes that for many years it had been the custom of the county treasurer of Boone County to send tax receipts to the said bank at Bouton, to be delivered to the taxpayers, upon payment of the amount due as taxes. It also appears that certain of the appellees, if not all of them, had, at various times, called at the office of the treasurer during said period of years, for the purpose of paying taxes, and had been informed by the treasurer that the tax receipts had been sent to the bank at Bouton, and that payment of taxes should be made at said bank.

On or about September 20, 1923, said bank sent to the county treasurer a description of the real estate owned by each of the appellees, upon which taxes would become delinquent on October 1, 1923, and upon receipt of said list of taxpayers, the county treasurer prepared and signed an official receipt for each taxpayer in the usual form, and forwarded the same to said bank. The bank proceeded to collect the taxes. The several tax receipts were delivered by the bank to the persons entitled thereto. Thereupon, the bank entered credit in said account of the county treasurer in the bank for the amount so received by it as taxes, and sent the county treasurer a credit card, stating that there was on deposit to the credit of said treasurer in said bank the full amount of the taxes called for by said receipts. The treasurer made no effort to withdraw the deposit. While the said fund so remained, the bank was closed, and placed in the hands of a receiver. It appears that the county treasurer, at the time of sending out said tax receipts, marked the taxes as paid upon his books, as shown by the stubs of said receipts, and that subsequently he canceled this entry. He filed a claim with the receiver of the bank for said amount. He is now demanding payment of the said taxes from the taxpayers, and unless enjoined, will endeavor to collect the same from the appellees by proper proceedings.

I. The sole question for our determination, in its final analysis, is whether or not the appellees have paid their taxes for the year in question. The statute, Section 7184, Code of 1924, makes it the duty of the county treasurer to "proceed to collect the taxes." Code Section 7210 provides as follows:

"No demand of taxes shall be necessary, but it shall be the duty of every person subject to taxation to attend at the office of the treasurer, at some time between the first Monday in January and the first day of March following, and pay his taxes in full, or one half thereof before the first day of March succeeding the levy, and the remaining half before the first day of September following."

Code Sections 7207, 7208, and 7209 are as follows:

"7207. The treasurer is authorized and required to receive in payment of all taxes by him collected, together with the interest and principal of the school fund, the circulating notes of national banking associations organized under and in accordance

with the conditions of the act of the congress of the United States, entitled, 'An act to provide a national currency secured by the pledge of the United States stocks, and to provide for the redemption thereof,' approved February 25, 1863, and acts amendatory thereto, United States legal tender notes, and other notes and certificates of the United States payable on demand and circulating or intended to circulate as currency.

"7208. Auditor's warrants shall be received by the county treasurer in full payment of state taxes, and county warrants shall be received by the treasurer of the proper county for ordinary county taxes, but money only shall be received for the school tax. Road taxes, except the portion payable in money, may be discharged and road certificates of work done received, as provided by law.

"7209. Warrants issued by any city or town shall not be received by the county treasurer in payment of the city or town taxes."

It is apparent from these provisions of the statute that the legislature has provided the manner in which taxes shall be paid. It is made the duty of every person subject to taxation "to attend at the office of the treasurer" between the dates specified and pay his taxes. Sections 7207 and 7208 provide in what medium the payment shall be made. It is the general rule that payment of taxes must be in money only, except as may be provided by statute. 3 Cooley on Taxation (4th Ed.), Section 1252; *Miltenberger v. Cooke,* 18 Wall. 421 (21 L. Ed. 864); *People v. Seeley,* 117 Mich. 263 (75 N. W. 609); *City of Enterprise v. Rawls,* 204 Ala. 528 (86 So. 374); *Moritz v. Nicholson,* 141 Miss. 531 (106 So. 762); *City of Hartford v. Franey,* 47 Conn. 76; *Johns v. McKibben,* 156 Ill. 71 (40 N. E. 449).

It is also the general rule that payment of taxes must be made to the officer authorized to receive the same, or to someone duly empowered to act in his behalf. *Daily v. State ex rel. Bigler,* 171 Ind. 646 (87 N. E. 4); *Heath v. Hazelip,* 159 Ky. 555 (167 S. W. 905); *Auditor Public Accounts v. Western Union Tel. Co.,* 20 Ky. Law Rep. 469, 46 S. W. 704; *Sherrick v. State,* 167 Ind. 345 (79 N. E. 193); *Pitman v. State,* 59 Okla. 270 (158 Pac. 1137); *Haynie v. Bryant & Parker,* 117 Okla. 138 (245 Pac. 612). See, also, *Jones v. Welsing,* 52 Iowa 220.

A tax receipt is presumptive evidence of payment of the

taxes described therein. *Bright v. Slocum*, 77 Iowa 27; *Seigneuret v. Fahey*, 27 Minn. 60 (6 N. W. 403); *Lobban v. State ex rel. Carpenter*, 9 Wyo. 377 (64 Pac. 82); *Moon v. March*, 40 Kan. 58 (19 Pac. 334); *Johnstone v. Scott*, 11 Mich. 232.

A tax receipt may, however, be explained by parol, where a mistake is shown therein. *Gage v. Hampton*, 127 Ill. 87 (20 N. E. 12).

With the general rules before us, we proceed to a consideration of the law applicable to the instant case.

In this case, the taxpayers did not go to the office of the county treasurer and pay their taxes there in money, as the statute contemplates. The tax receipts were sent by the county treasurer to the bank at Bouton, and the bank at Bouton collected the amounts due from each of said taxpayers, and delivered the official receipts therefor. Had the bank forwarded the money to the county treasurer, no question would arise but that the taxes were paid.

The county treasurer was fully advised of the payment to the bank, and that it held the money subject to the order of the county treasurer. With full knowledge of this situation, the county treasurer left the money on deposit in the bank, with other public money, and later filed a claim therefor with the receiver.

Appellants place great reliance on the case of *Scheafer v. McFarland*, 49 S. D. 605 (207 N. W. 982). In that action, suit was brought by a taxpayer for a writ of mandamus, to require a county treasurer to deliver certain tax receipts to him. It appeared that the taxpayer paid the amount of his taxes to a bank, and the bank placed the money on deposit to the credit of the county treasurer, and notified the county treasurer that the taxes had been so paid and the money so deposited. The county treasurer "took no action in the matter" for nearly a month, when he drew on the bank for the money paid by the taxpayer, and accompanied said draft with the tax receipt, to be delivered to the taxpayer. This draft was returned unpaid. The tax receipt was never delivered. Thereupon, the taxpayer sought by mandamus to compel delivery of his tax receipt. The court held that, under such a state of facts, the bank was the agent of the taxpayer, and that, by paying the money in to the bank, even though the same was credited by the bank to the county treas-

urer, the taxpayer did not, as between himself and the county, effectuate a payment of the taxes.

In the cited case, the taxpayer made the bank his agent to pay his taxes and get from the county his receipt therefor. He had paid his money to the local bank, and the local bank advised the county treasurer that the money had been so paid. The tax receipt was *not* in the hands of the bank for delivery to the taxpayer. Later, it was sent to the bank, with a sight draft, under condition that the receipt could be delivered only in the event that the sight draft was paid. The taxpayer paid his money to the bank, as his agent, for the purpose of having the bank pay the same to the county treasurer and receive his tax receipt. This never was done. The county never got the money, and the taxpayer never got his receipt.

But such is not the situation in the case at bar. In this case, the treasurer sent the receipts to the bank for delivery to the taxpayers *when the taxes were paid*. The taxpayers paid in their money to the bank, and *received their receipts*. The treasurer charged the bank with the money as a deposit. In a sense, the bank was the agent of the county treasurer, to deliver the tax receipts and get the money from the taxpayers. The treasurer could, and undoubtedly should, have refused to forward the tax receipts to the bank until the money for the taxes had been in fact paid to him at his office. This was his duty, under the statute. He did not do this, however. He sent the receipts to the bank, to be delivered when the taxes were paid, and the taxes were in fact paid and the receipts delivered. Instead of demanding that the money be placed in his hands before the receipts were delivered, the county treasurer saw fit to authorize delivery of the receipts when the money was paid to the bank. It was so paid to the bank. Under this state of facts, has the taxpayer paid his taxes?

Appellants rely on the case of *Skinner v. Mitchell*, 108 Kan. 861 (197 Pac. 569). In that case, it appeared that a large number of taxpayers paid their taxes to a certain realty company. They also paid said realty company a commission for its services for them in connection with the payment of said taxes. The realty company deposited the money to the credit of the county treasurer in a bank, and received deposit slips therefor from the bank. Later, it forwarded said deposit slips to the county treas-

urer, and subsequently, the county treasurer, *"without issuing
any tax receipts to the taxpayers,"* made a sight draft on the
bank for the full amount of the deposit. The bank was insolvent,
and the draft was not paid. The court held that the deposits so
made, did not constitute a payment of the taxes.

An entirely different situation is presented in the instant
case. Here, the tax receipts were sent by the county treasurer
to the bank for delivery, and were by the bank delivered to the
taxpayers, upon receipt of the amount of the taxes. The bank
held the money thereafter for the treasurer,—not for the tax-
payers. The difference in the situation in the two cases is ap-
parent.

We now turn to a consideration of some of our own cases.
*Page County v. Rose,* 130 Iowa 296, involved a claim of the
county for funds in a bank, where the county treasurer had sent
tax receipts to a bank for collection. We said:

"Appellant contends that the transaction on which the ac-
count or claim presented by the county was not in fact a pay-
ment of taxes. In other words, it is said that the county re-
ceived nothing and has parted with nothing, and stands in no
better position to assert a preferred claim than would the treas-
urer himself. But this is not quite correct. The treasurer had
a right to collect the taxes and to bind the county by delivering
proper receipts therefor. * * * It is matter of common knowl-
edge that in most of our counties a very large fraction of the
taxes is collected by and through banks doing business in towns
other than the county seat, and that the custom is one of much
convenience and advantage to a large number of the taxpayers.
But while this is true, it remains equally true that the treasurer
in doing so exceeds the strict letter of his authority, and the loss
by the failure of a bank holding moneys thus received is pri-
marily his loss. It is, however, within the right of the county
which traces its moneys thus collected into the hands of the
bank to demand and recover it."

In *Brown v. Sheldon St. Bank,* 139 Iowa 83, we considered,
among other things, the claim of a county treasurer for funds
in the hands of an insolvent bank. We said:

"Thereafter,—and conforming, as it appears, to a custom
long prevailing in the county, and known to the members of the
board of supervisors of the county,—claimant made out, from

time to time, from the tax books of the county, tax receipts showing payment of taxes by taxpayers residing in and about Sheldon, and these he signed, and sent to the Sheldon bank, by which bank they were, in turn, delivered to the respective taxpayers, upon payment of the amount called for. As thus collected by the bank, the amounts were passed to the credit of claimant in the deposit account."

The county was entitled to the funds.

In *Sawyer v. Stilson,* 146 Iowa 707, a county treasurer sought to recover from a depositary bank on a bond given by said bank for such deposits. We said:

"The great bulk of the deposit for which a recovery is asked in this case is shown to have been the accumulation of moneys received from property owners in the vicinity for payment of taxes. The bank, as is common in this state with banks remote from the county seat, appears to have done considerable business as a tax-paying agent—receiving money for that purpose from its customers, and ordering their tax receipts from the county treasurer. It was the custom of the plaintiff, on receiving an order of this kind from the bank, to make out and send the receipts as requested, charging the amount thereof to the bank, as a deposit, while the bank entered on its books a corresponding credit to the treasurer for the moneys so collected. Appellants' counsel argue very strenuously that these transactions do not amount to 'deposits,' within the meaning of the bond."

We held that the money so paid was "county money."

In *Buena Vista County v. Marathon Sav. Bank,* 198 Iowa 692, we considered a question of preference in funds in an insolvent bank, and said:

"The undisputed record facts disclose that the moneys received by the appellant bank were received in payment of taxes to Buena Vista County. The moneys so received consisted of cash and checks delivered to the bank by local taxpayers, who, upon making such payments, were given tax receipts by the bank, which had received them from the county treasurer for that purpose. The funds so received were placed to the account and credit of the county, which was the owner, and which was entitled to all these sums so paid by the taxpayers. Clearly, the money belonged to the county, and clearly, it constituted a debt owing by the bank to the county."

In the recent case of *Leach v. Farmers & Merch. Sav. Bank*, 202 Iowa 881, a question arose under a claim of preference in a transaction somewhat similar to that involved in the instant case. In that case, as in the case at bar, it appeared that the bank wrote a letter to the county treasurer in an adjoining county, asking for the statement of taxes due in said county from certain persons. On receipt of said letter, the county treasurer forwarded to the bank a statement of the amount of taxes due, *together with the tax receipts*. This was for the obvious purpose of having the taxes paid to the bank and the receipts delivered to the taxpayers. The bank collected the amount due from the taxpayers, and delivered the tax receipts. It did not forward the cash to the county treasurer, but sent a cashier's check therefor, which was dishonored. We considered the question of the right of the county treasurer to a preference in the funds in the hands of the bank, under such circumstances, and held that he was entitled to such preference.

In the foregoing cases we have recognized the rule that, under a state of facts similar to those in the case at bar, the money paid by the taxpayer, for which he received his receipt, became public funds of the county. This could not be the case if the taxpayer still owed the taxes.

It was the statutory duty of the county treasurer to have required that the actual money should be paid to him in cash, before the delivery of the tax receipt to the taxpayer or to the bank. A public interest is here involved, and the public are entitled to have the taxes paid in the manner pointed out by the statute. The public revenues must be collected by the county treasurer substantially in the manner provided by the statute, and accounted for in full by him. He is under bond.

The rights of the taxpayer are also involved, and he should not be compelled to pay his taxes twice, if he has in fact paid them once according to law. This case is not one where the taxpayers made the bank their agent, for the purpose of taking their money and forwarding it to the treasurer to pay taxes, and before it had been so forwarded, the bank failed, and no tax receipt had been issued or delivered. Here, the treasurer saw fit to send the tax receipts to the bank, for collection by the bank in behalf of the treasurer, and with authority to deliver the receipts when the amount was so paid. The money was in fact

paid by the taxpayers, and the tax receipts were in fact delivered. The treasurer charged the bank therewith, and marked the taxes as paid, on his books. The treasurer saw fit to place (leave) this money in the hands of the Bouton bank as a depositary. The legal situation, so far as the taxpayers are concerned, is the same as though the Bouton bank had taken the actual money to the treasurer's office and had received the tax receipts therefor, and the treasurer had thereupon deposited the money in the Bouton bank. The taxpayers, by the transaction, in fact paid their taxes to the county treasurer. Whether the county treasurer acted illegally in depositing the money in the Bouton bank, and what may be his rights or his liabilities in respect thereto, are matters not before us for consideration in this case. We limit our decision to the one question that, under the established facts in this case, the appellee taxpayers did in fact pay their taxes to the county treasurer, and received their receipts therefor. They therefor are not required to pay them again, and their property is not subject to sale for delinquent taxes. We reach the conclusion that the decree of the trial court was correct, and it is—*Affirmed.*

EVANS, C. J., and STEVENS, KINDIG, and WAGNER, JJ., concur.